FILED

03 JUN 30 PM 6:30

U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM E. TURNER, et al., | ) | Case No.: 1:03 CV 471 |
| Plaintiffs | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| FRITO-LAY, INC., | ) | |
| Defendant | ) | ORDER OF REMAND |

On February 11, 2003, Plaintiffs William E. Turner, Bernard D. Shaffer, and Michael Kennedy ("Plaintiffs") filed this action in the Cuyahoga County Court of Common Pleas against Defendant Frito Lay, Inc. ("Defendant"). Plaintiffs are claiming damages and seek injunctive relief for Defendant's alleged violations of the Ohio Minimum Fair Wage Standard Law, Ohio Revised Code, §4111.01 et. seq. They seek to bring this action as a class action, on behalf of themselves and all others similarly situated. Now pending before the court is Plaintiffs' Motion to Remand (ECF No. 6). Because the Complaint in the above-captioned matter does not present a federal question, Plaintiffs' claims do not fall within the original jurisdiction of this court. Accordingly, the court grants Plaintiffs' Motion to Remand to the Cuyahoga County Court of Common Pleas.

## I. FACTS

Plaintiffs are former employees of Frito-Lay, Inc. and residents of the State of Ohio. The named Plaintiffs are members of the International Brotherhood of Teamsters, whose employment is governed by a collective bargaining agreement ("CBA"). The CBA includes provisions regarding the manner and method upon which they are to be paid for their work, including overtime wages.[1] Specifically, it sets forth formulae for computing base pay and overtime compensation, and contains a provision governing the "Hours and Conditions" for overtime.

In their Complaint, Plaintiffs allege that Defendant failed to compensate them for overtime wages, either during their employment or at the time their employment terminated. They claim that Defendant has a policy of not providing compensation for all hours they have worked, including overtime wages. Plaintiffs further allege that Defendant has failed to keep accurate records of time worked by employees. On February 11, 2003, they filed suit in the Cuyahoga Court of Common Pleas, pursuant to Ohio's Minimum Fair Wage Standard Law, Ohio Rev. Code § 4111.01 *et seq.*, seeking to be compensated for the hours they claim they have not been paid.

On March 17, 2003, Defendant removed the action to the district court. Defendant raises two arguments in support of removal. First, it argues that because Ohio Rev. Code §4111.03(A), on which Plaintiffs base their claims, wholly adopts a section of the Fair Labor Standards Act of 1938 ("FLSA"), the resolution of Plaintiffs' claims will necessarily involve the interpretation and application of federal law, thereby establishing a federal question. Second, it maintains that their

---

[1] It appears from the pleadings that some members of the proposed class action may not be parties to the CBA.

2

claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA") because resolution of their claims will require interpretation of the CBA.

Shortly after Defendant removed this action, Plaintiffs filed the instant Motion to Remand, alleging lack of jurisdiction as grounds for remand to state court. They maintain that although the pertinent section of the Ohio Rev. Code §4111.03(A) does incorporate a federal statute by reference, such reference is insufficient to create federal question jurisdiction. Furthermore, they argue that although they are parties to a collective bargaining agreement, their claims are not preempted by the LMRA because: (1) they are not bringing a claim for breach of the CBA and (2) the meaning of the CBA's terms is not in dispute; rather, at most, the court will have to apply the wage provision in the CBA to determine Plaintiffs' damages.

## II. LAW AND ANALYSIS

### A. Removal Standard and the Well-Pleaded Complaint Rule

The party seeking to litigate in federal court bears the burden of establishing the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936). The non-jurisdictional facts in the complaint are accepted as true for the purposes of a motion to remand. *Suozzo v. Bergreen*, 2002 WL 1402316 (S.D.N.Y. June 27, 2002); *Kimmel v. Bekins Moving & Storage Co.*, 210 F.Supp.2d 850 (S.D. Tex. 2002). The removing defendant's burden is to prove, by a preponderance of the evidence, that the jurisdictional facts it alleges are true. *Gafford v. General Electric Co.*, 997 F.2d 150, 158 (6th Cir. 1993).

Removal of an action from state to federal court is allowed when the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). A removed case must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."

3

28 U.S.C. § 1447(c). Where, as here, there is no diversity between the parties, the propriety of removal turns upon whether the case falls within the original "federal question" jurisdiction of the United States district courts. *Id.* District courts have original jurisdiction over matters which present a "federal question," that is, cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

The Supreme Court has adopted the "well-pleaded complaint rule" for determination of whether federal question jurisdiction exists. Under this rule, a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises some substantial, disputed issue of federal law. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936)). Thus, even where a complaint only cites state law, the "case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 13 (1983). This rule allows a plaintiff to "eschew[] claims based on federal law [and] choose to have the cause heard in state court." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-99 (1987). As one court has explained, "[a] plaintiff with a choice between federal and state law claims may elect to proceed in state court on the exclusive basis of state law, thus defeating the defendant's opportunity to remove. . . ." *Carpenter v. Wichita Falls Independent School Dist.*, 44 F.3d 362 (5th Cir. 1995).

4

### C. Ohio Rev. Code § 4111.03(A)

Plaintiffs' cause of action is based on the Ohio Minimum Fair Wage Standard Law, Ohio Rev. Code §4111.01(A) *et seq.*, which incorporates portions of FLSA. Specifically, Ohio Rev. Code §4111.03(A) states:

> An employer shall pay an employee for overtime at a wage rate one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938," 52 Stat. 1060, 29 U.S.C.A. 207, 213 as amended.

*Id.* Defendant argues that this court has jurisdiction over this case because the fact that § 4111.03(A) incorporates the standards set forth in FLSA means that adjudication of Plaintiffs' claims will necessarily require interpretation as to the breadth and meaning of the relevant portions of FLSA. For the reasons discussed herein, the court disagrees.

Two old Supreme Court cases established the parameters of federal court jurisdiction in this area. In *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), a shareholder of a corporation brought a state law cause of action to enjoin the corporation from purchasing certain bonds issued by the federal government. In so doing, the plaintiff maintained that the purchase of the bonds was not legally permissible under state law because they were issued in violation of the Constitution. The Supreme Court found there was federal question jurisdiction under these circumstances, stating: "The general rule is that, where it appears from the bill or statement of plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such federal claim is not merely colorable, and rests upon a reasonable foundation, the District Court has jurisdiction. *Id.* at 199.

5

In a later case, *Moore v. Chesapeake & Ohio Railway*, 291 U.S. 205 (1934), the Supreme Court found no jurisdiction where an injured plaintiff, suing under state law, relied on a federal railroad safety statute to prove he was not contributory negligent under state law which prohibited a finding of contributory negligence if the employer's violation of any safety law contributed to the workers' injury or death.

In that case, the court stated: "[I]t does not follow that a suit brought under the state statute which defines liability to employees who are injured while engaged in intrastate commerce, and brings within the purview of the statute a breach of duty imposed by the federal statute, should be regarded as a suit arising under the laws of the United States and cognizable in the federal court in the absence of diversity of citizenship." *Id.* at 214-15.

In a more recent case, *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986), Justice Stevens, who wrote the majority opinion, sought to reconcile these seemingly contradictory holdings by stating: "[T[he difference in results can be seen as manifestations of the differences in the nature of the federal issues at stake." *Id.* at 816. He explained that while the issue to be decided in Smith was the constitutionality of a federal statute, in Moore, the "violation of the federal standard as an element of state tort recovery did not fundamentally change the state tort nature of the action. *Id.* Beyond this general, and not easy to apply, instruction of the Court, this court must look for guidance in the subsequent cases, which apply the court's holding in varying contexts.

This case is strikingly similar to *Cinquemano v. CIBA-GEIGY Corp.*, 962 F.Supp. 862 (M.D. La. 1996). In *Cinquemano*, the plaintiff-employees filed suit in state court based on a state statute that created a cause of action to obtain records of their exposure to toxic substances. *Id.* at 863. The state statute expressly incorporated a federal statute and federal regulation to provide the standard

for Louisiana courts to follow in deciding whether an employer complied with an employee's request under the statute. *Id.* at 864. It provided in pertinent part:

> [A]ny current or former employee or his designated representative shall have a right of access to employer's records of employee exposures to potentially toxic materials or harmful physical agents and employee medical records and any analyses using employee exposure or medical records as provided for in 29 U.S.C. 657 and in 29 C.F.R. 1910.20, "Access to Employee Exposure and Medical Records."

La. R.S. 23:1016(A).

The court rejected the employer's argument that the employees' claim was "essentially a federal claim in disguise." *Id.* at 864. In doing so, it held that while the federal provision incorporated into the statute provides the scope of the employees' right to the records, the state statute provided their cause of action. *Id.* According to the court,

> [a]lthough plaintiffs may refer to the federal statute, plaintiffs are not asserting a cause of action under federal law. The plaintiffs have a clear choice between federal and state law remedies. As is their right, plaintiffs have chosen to proceed under state law.

*Id.*

The statute under which Plaintiffs here are suing is akin to the statute at issue in *Cinquemano*. Ohio Rev. Code §4111.03(A), like La. R.S. 23:1016(A), provides Plaintiffs' cause of action, while FLSA assists in defining the scope of the rights protected. Like the *Cinquemano* plaintiffs, Plaintiffs could have chosen to sue under the applicable federal statute, but decided not to. As the *Cinquemano* court noted, the fact that the state law at issue relies on federal precedents is not enough to "convert this state law claim to a federal claim." *Id.* at 865.

The *Cinquemano* court also rejected the employer's argument that because the federal statute and federal regulation would have to be interpreted to resolve the employees' claim, it was an

7

essential element of the employees' claim. It did so on the basis that such an argument ignores policy concerns regarding federalism. According to the court, to find federal question jurisdiction in cases such as these would "'disregard principles of federalism [because] it ignores the superiority of state-court forums for state-law claims....'" *Id.* at 865 (quoting *Carpenter*, 44 F.3d at 367.) As one commentator has noted, "[c]oncerns of comity in the federal system and a recognition of state court expertise on state law issues, then, counsel against blindly allowing litigants to seek jurisdiction in federal court for suits that state courts have traditionally handled." *Mr. Smith Goes to Federal Court: Federal Question Jurisdiction Over State Law Claims Post-Merrill Dow*, 115 Harv.L.R. 2272, 2291 (June 2002). These concerns are particularly applicable in the area of labor standards generally:

> [T]he states have traditionally regulated a broad range of labor standards issues. By express language in the FLSA and longtime practice under that ACT, the states retain broad authority over minimum wages, overtime standards, wage claim procedures, rest and lunch breaks, and a broad range of traditional 'labor standards' issues. The FLSA supplants state authority only when state law purports to require or permit an act made unlawful by the FLSA–for example, a state law purporting to establish a legal minimum wage lower than the federal mandate.

Henry H. Drummonds, *The Sister Sovereign States: Preemption and the Second Twentieth Century Revolution in the Law of the American Workplace*, 62 Fordham L.Rev. 469, 537 (Dec. 1993).

Finally, a previous decision of this court, *Portage County Bd. of Comm'rs v. City of Akron*, 12 F.Supp.2d 693 (N.D. Ohio 1998), supports the conclusion that §4111.03(A)'s incorporation of FLSA does not create federal question jurisdiction. In *Portage*, the county sued the city for improper diversion, use, and pollution of water under an Ohio statute. The city argued that removal was proper because the Ohio statute at issue incorporated by reference certain portions of the federal

8

Water Resources Act of 1986. The court found this insufficient to establish federal question jurisdiction, explaining that "[r]eference to [a federal statute] within the text of [the Ohio statute] does not make the [federal statute] a 'necessary element' requiring Plaintiff Portage County's state claims to be heard in a federal forum." *Id.* at 699-700.[2]

Accordingly, § 4111.03(A)'s incorporation of portions of FLSA does not give this court jurisdiction over Plaintiffs' claims.

### D. Section 301 of LMRA - Preemption

Defendant next argues that because adjudication of Plaintiffs's claims will require interpretation of the CBA, their claims are completely preempted by § 301 of LMRA. Specifically, Defendant maintains that in order to resolve Plaintiffs' claims, the court will have to interpret the CBA's provisions regarding conditions and compensation for regular and overtime work, including the complex formulae set forth in the CBA for calculating overtime. According to Defendant, their

---

[2] In so holding, the court also found that "[t]he Resources Act was not intended to 'preempt' any and all concurrent state laws that may be patterned after the Act, or incorporate by reference the Act's provisions." Rather, the court noted that "the Ohio legislature has developed its own statutory scheme to regulate water diversion. Simply because this scheme incorporates portions of the Resource Act, however, does not suggest that the Resources Act preempts this state law." *Id.* at 699-700.

Defendant in this case has not argued that FLSA preempts state wage and hour laws, or that if it did, such preemption would be sufficient to create federal question jurisdiction. Had it raised this argument, the issue would have been resolved against a finding of jurisdiction. First, the courts have generally recognized that FLSA is not intended to preempt state wage and hour laws. *See, e.g., Keeley v. Loomis Fargo & Co.*, 11 F.Supp.2d 517 (D.N.J. 1998) (citing cases). Furthermore, as with the statute in *Portage*, the Ohio legislature has adopted its own statutory scheme to regulate employee wages. *See* Ohio Rev. Code §4111.01 *et seq.* The fact that it incorporates portions of, and requires compliance with, FLSA does not suggest that FLSA preempts the Ohio Minimum Fair Wage Law. *See Portage County*, 12 F.Supp.2d at 700. Second, and perhaps more importantly, it is well settled that the assertion of federal preemption as a defensive argument will not confer federal question subject matter jurisdiction. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987).

claims are therefore substantially dependent on the CBA, all that is required to trigger § 301 preemption.

### 1. Preemption in General

The Supreme Court has held that "[t]here does exist...an "independent corollary" to the well-pleaded complaint rule...known as the "complete preemption" doctrine." *Caterpillar Inc.*, 482 U.S. at 393 (1987) (quoting *Franchise Tax Board*, 463 U.S. at 12). This doctrine applies where "the preemptive force of a statute is so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar Inc.*, 482 U.S. at 393 (quoting *Metropolitan Life Insurance Co.*, 481 U.S. at 65.) Thus, where Congress has manifested an intent to completely preempt an area, "any civil complaint raising this select group of claims is necessarily federal in character," and therefore removable. *Id.* at 63-64.

### 2. Section 301 Preemption

Section 301 of LMRA is such an area of law. *Caterpillar*, 482 U.S. at 394. Section 301 preemption will apply where a plaintiff's claims are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers*, 471 U.S. at 220. However, the Supreme Court has cautioned that "not every dispute...tangentially involving a provision of a collective bargaining agreement, is preempted by § 301." *Allis-Chalmers Corporation v. Lueck*, 479 U.S. 202, 211-212 (1967). Elaborating, the Court has held that "§ 301 does not preempt a claim alleging state law substantive rights that apply without regard to a CBA and can be resolved without interpreting a CBA." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988). Specifically, the Court in *Lingle* stated:

> A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that

10

> might be helpful in determining the damages to which a worker prevailing in a state law suit is entitled. . . . Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law claim, not otherwise pre-empted, would stand. Thus, as a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate sate-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted.

*Lingle*, 486 U.S. at 413 n.12 (internal citations omitted).

In *Gregory v. SCIE, LCC, dba EPSG Mgt. Serv., LP*, 317 F.3d 1050 (9th Cir. 2003), the Ninth Circuit applied these principles to a case with facts very similar to those at issue here. There, an employee brought a state court action for unpaid overtime, alleging that his employer had failed to combine working hours from various projects on which he worked, resulting in a potential violation of California overtime laws. *Id.* at 1053. The action was removed to federal court based on § 301 preemption. *Id.* The defendant-employer argued that because adjudication would require the court to consider the "complexities in the administration of the CBA's overtime provisions," the claims should be preempted by Section 301. *Id.* at 1054, n.4. The court disagreed, holding that the employee's claim was not preempted because there was no dispute over the interpretation of terms in the CBA. The court stated:

> [w]hile overtime is calculated in accordance with the terms of the CBA, this case involves no issue concerning the *method* of calculation. The issue here is not *how* overtime rates are calculated but whether the *result* of the calculation complies with California law.
>
> ***
>
> The bottom line...is that [defendant] is bound by state law, which gives employees a right to overtime compensation 'for all overtime hours worked.' Overtime hours are defined in [the state statute.] Whether [defendant's] practice of not lumping different production

11

> to determine hours worked complies with [state] law is a question for the state court.

*Id.* at 1054.

Defendant here argues that determining whether its method of payment is lawful will require construing the collective bargaining agreement, which contains complex formulae for calculating wage rates. However, a close reading of the Complaint reveals that Plaintiffs do *not* dispute the methods of calculating their payments, only whether Defendant has actually kept track of all of their hours and paid them for the hours they have worked. (*See, e.g.*, Complaint at ¶¶ 2, 16). Therefore, adjudication of this claim will not require interpretation of the CBA; at most, the formulae for calculating Plaintiffs' wage rate will have to be applied to calculate whatever damages they may be entitled to. Therefore, § 301 does not preempt Plaintiffs' claims.[3]

## IV. CONCLUSION

For the foregoing reasons, this court is without original jurisdiction to hear the instant case. Because the case was improperly removed from state court, the court must remand it back to the

---

[3] Were the method of payment in dispute, the claims would likely be preempted. The *Gregory* court recognized this possibility in distinguishing *Gregory* from another decision also from the Ninth Circuit, *Firestone v. Southern California Gas Company*, 219 F.3d 1063 (9th Cir. 1999). There, employees brought suit against their employer for violations of California overtime laws. *Id.* Plaintiffs disputed the process by which Defendant calculated regular rates under the CBA; this calculation allegedly failed to meet the requirements of California law. *Id.* The *Firestone* court found that interpretation of the CBA was necessary and that therefore the claims were preempted under LMRA. *Id.* at 1066-67. Distinguishing *Firestone*, the *Gregory* court noted that its case required no interpretation of the CBA. *Gregory*, 317 F.3d at 1054, n.3.

court in which it was originally brought. Accordingly, Plaintiffs' Motion to Remand (ECF No. 6) is granted, and the case is remanded to the Cuyahoga County Court of Common Pleas.

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

June 30, 2003